## JOE STONE V. THE STATE.

No. 17426. Delivered March 20, 1935.

The opinion states the case.

*Denman & Fowler,* of Nacogdoches, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is theft of hogs; the punishment, confinement in the penitentiary for two years.

A. E. Boyd owned some hogs which ranged about half a mile from the tram line of the Chronister Lumber Company. On the 21st of February, 1934, he found that several of said hogs had been slaughtered. He discovered three heads and five ears half a mile from where the tram line crossed from Cherokee County into Nacogdoches County. Two sets of the ears were in his mark. The heads showed that the hogs had been shot with a shotgun. The tracks of a "broad-tired" wagon were near the place where the hogs had been killed. These tracks were followed to the home of W. H. Hamby, where appellant and Aaron Stone appeared to be living at the time. The State relied upon circumstantial evidence to connect appellant with the theft. Appellant did not testify in his own behalf, but introduced a witness who stated that he had sold appellant a number of hogs about the time Mr. Boyd's hogs were stolen.

Aaron Stone, who was jointly indicted and tried with appellant, was acquitted.

W. H. Hamby, a witness for the State, testified that on the occasion of the theft he had let Aaron Stone have his wagon to haul a load of pine; that when he (the witness) returned home about dark after having worked in the field all day he saw appellant in the smokehouse cutting up some meat; that he did not examine the meat, but observed two whole hogs; that he did not observe any heads; that on the next day after he observed appellant in the smokehouse officers took possession of the meat; that he made an examination of the bed of the wagon he had loanded Aaron Stone and found that it had blood on it. The witness was later recalled to the stand by counsel for the State and asked if he had not stated to the officers when they took possession of the meat in his smokehouse that he had loaned his wagon to appellant and Aaron Stone on the occasion of the theft. He answered in the negative. He was further asked if he did not tell the officers that Aaron Stone and appellant came back to his place after dark. He denied making such statement. Again, he was asked if he did not state to the officers that appellant and Aaron Stone brought three hogs home in the wagon. He again answered in the nega-

tive. Thereafter, the State introduced the officers, who testified that the witness had made such statements to them. Appellant timely and properly objected to the effort on the part of the State to impeach said witness. The several bills of exception bringing the matter forward are qualified to the effect that the court found that the witness was hostile, and permitted the State to impeach him for that reason. We think the bills reflect reversible error. It is well settled that the mere fact that a witness is reluctant or unwilling will not warrant the introduction before the jury of his statements out of court. Thomas v. State, 274 S. W., 577, and authorities cited. Under some circumstances, as where State's counsel is surprised by his witness giving hurtful testimony against the State, his prior statement out of court may be used to impeach him. Thomas v. State, supra. We fail to see wherein the witness testified to either affirmative or negative facts injurious to the State. He merely failed to make out the State's case. A mere failure to make proof is no ground for impeaching one's own witness. Branch's Annotated Penal Code, sec. 164; Perrett v. State, 170 S. W., 316.

We are of opinion that the court should have responded to appellant's exception to the charge for its failure to give an instruction on alibi. Several witnesses placed appellant at places several miles away from the scene of the theft on the date the State contended the offense was committed.

The judgment is reversed and the cause remanded.

*Reversed and remanded*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.